UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NORTHWEST ARKANSAS CONSERVATION
AUTHORITY                                                                                                    PLAINTIFF

v.                                       Case No. 5:20-cv-05077

CROSSLAND HEAVY CONTRACTORS,
INC., et al.                                                                                                  DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendants Crossland Heavy Contractors, Inc. ("Crossland") and Fidelity & Deposit Co. of Maryland's ("Fidelity") motions (Docs. 7, 9) to dismiss. Defendants also filed briefs in support (Docs. 8, 10). Plaintiff Northwest Arkansas Conservation Authority ("NACA") filed a response (Docs. 19, 21) and brief in opposition (Docs. 20, 22) to each motion. Defendants then filed a joint reply (Doc. 27) with leave of Court. For the reasons set forth below, Crossland's motion to dismiss will be granted in part and denied in part. Fidelity's motion to dismiss will be granted.

**I.      Background**

NACA is a nonprofit corporation "created in 2002 pursuant to ARK. CODE ANN. § 14-233-101 to address the treatment and disposal of bio-solids for the public in Washington and Benton counties in Arkansas." (Doc. 3, p. 2). NACA comprises the municipalities of Bentonville, Bethel Heights, Cave Springs, Centerton, Elm Springs, Highfill, Lowell, Springdale, Rogers, and Tontitown. NACA was tasked with planning the Little Osage Creek Wastewater Improvements and Gravity Sewer and the Brush Creek Wastewater Improvements and Gravity Sewer project (the "Project"). On January 18, 2007, NACA entered into a contract with USI Consulting Engineers, Inc. ("USI") to design and oversee the Project, specifically the construction of approximately

1

47,000 linear feet of 30-inch and 36-inch diameter pipeline. NACA invited multiple companies to bid on the project before Crossland was eventually awarded the construction contract. On February 2, 2009, Crossland, as principal, executed a performance bond requiring Fidelity, as surety, to pay NACA $9,602,350.00 should Crossland fail to perform all work in accordance with the contract between NACA and Crossland.

Construction of the project was completed in June of 2010. In 2016, a small pipeline failure was reported, which Crossland repaired. Several more pipeline failures occurred between 2017 and 2019, resulting in sewage overflows and third-party repairs. An independent assessment of the pipeline was conducted in 2018, revealing that 96% of the pipeline sections had ovality[1] exceeding the acceptable 5% for pipes of that age. On July 24, 2019, NACA sent Crossland a notice of breach of warranties, guarantee, contract, and negligence. NACA requested that Crossland cure any deficiencies related to the project, or in the alternative, compensate NACA. Crossland did not offer to completely cure the deficiencies. Pursuant to the contract, NACA then submitted its claims against Crossland to the American Arbitration Association, but Crossland declined to participate, stating NACA did not timely invoke the claims procedure. NACA alleges it has incurred damages in the amount of $61,892,360.00 because of Crossland's actions. On July 24, 2019, Crossland notified Fidelity of Crossland's performance failures, and Fidelity refused payment on the performance bond.

NACA filed a complaint against Crossland and Fidelity in the Circuit Court of Benton County, Arkansas on January 24, 2020. NACA's complaint alleges six claims against Crossland: breach of contract, negligence, breach of express warranty, breach of implied warranty, products

---

[1] Ovality, or out-of-roundness, measures a cross-section of pipe's deviation from a perfect circle. It is determined by the difference in the maximum diameter and minimum diameter of the pipe.

liability, and indemnity.  Additionally, NACA raises a breach of contract claim against Fidelity for violation of the performance bond.

## II.     Legal Standard

In ruling on a motion to dismiss, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).

## III.    Analysis

### A.     Statute of Repose

Crossland argues that NACA's claims are barred by the statute of repose found in ARK. CODE ANN. § 16-56-112(a).  A statute of repose provides a "timeliness" defense limiting the time in which an action may be brought, similar to a statute of limitations.  Unlike a statute of limitations, however, a statute of repose can "cut off entirely an injured person's right of action before it accrues, when that action does not arise until after the statutory period has elapsed." *Curry v. Thornsberry*, 128 S.W.3d 438, 441 (Ark. 2003).  ARK. CODE ANN. § 16-56-112(a) provides:

> No action in contract, whether oral or written, sealed or unsealed, to recover damages caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repair of any improvement to real property or for injury to real or personal property caused by such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction or repair of the

3

>improvement more than five (5) years after substantial completion of the improvement.

*See Rogers v. Mallory*, 941 S.W.2d 421, 423 (Ark. 1997) ("Thus, § 16-56-112(a) is more accurately described as a 'statute of repose' rather than a 'statute of limitations.'"). The Arkansas Supreme Court has broadly interpreted the statute of repose to apply to theories of recovery sounding in both contract and tort, holding that it encompasses "all actions which arise out of a construction contract where property damage has allegedly resulted from any deficiency in design, planning, supervision or observation of construction or the construction and repair of any improvement to real property." *Okla Homer Smith Furniture Mfg. Co. v. Larson & Wear, Inc.*, 646 S.W.2d 696, 698 (Ark. 1983) ("Here, it is obvious that the legislative purpose was to enact a comprehensive statute of limitations protecting persons engaged in the construction industry from being subject to litigation arising from work performed many years prior to the initiation of the lawsuit."). "Improvements" to real property include buried pipe. *DePriest v. Peikert*, 200 S.W.2d 804, 805–06 (Ark. 1947).

On its face, the statute of repose bars many of NACA's claims. NACA argues that the statute of repose is inapplicable to NACA's product liability claim because the pipe at issue is a "mass produced fungible product," and at least one federal court in Arkansas has predicted that the Arkansas Supreme Court would determine manufacturers of mass produced fungible products are not entitled to use the statute of repose as a defense because actions against them do not arise out of construction contracts but out of negligence in manufacturing. *Brown v. Overhead Door Corp.*, 843 F. Supp. 482, 485 (W.D. Ark. 1994). However, Crossland did not manufacture the pipe at issue, but was only responsible for installation of the pipe. "Protection [of the statute of repose] extends 'to the kinds of economic actors who perform acts of individual expertise akin to those commonly thought to be performed by architects and contractors—that is to say, to parties

who render particularized services for the design and construction of particular improvements to particular pieces or real property.'" *Id.* at 491 (quoting *Dighton v. Fed. Pac. Elec. Co.*, 506 N.E.2d 509, 515 (Mass. 1987)). Because Crossland was not a manufacture of the pipe, the statute of repose applies, and NACA's products liability claim against Crossland is barred. Additionally, NACA's claims for breach of contract, breach of implied warranty, breach of express warranty, and negligence arise out of the construction contract between NACA and Crossland, and these claims are also barred by the statute of repose.

### B.  Exceptions to the Statute of Repose

#### i.  Accepted-Work Doctrine

NACA argues an exception to the statute of repose applies because the defect in the pipe could not be detected, citing ARK. CODE ANN. § 16-56-112(h)(2)(B). Subsection (h) of that statute reinstates and codifies the accepted-work doctrine in Arkansas, which provides additional protection from third-party liability for contractors who construct or repair publicly owned improvements to public real property. This section of the statute is inapplicable to NACA's claims against Crossland. Crossland's statute of repose defense comes from subsection (a), not (h), of ARK. CODE ANN. § 16-56-112, and these claims do not involve third-party liability.

#### ii.  *Nullum Tempus Occurrit Regi*

NACA contends that it is exempt from statutes of limitations and repose under the doctrine of *nullum tempus occurrit regi* ("*nullum tempus*").[2] Although the Arkansas Supreme Court has determined *nullum tempus* can protect the state from statutes of limitation, no court has applied Arkansas's *nullum tempus* doctrine to protect the state from statutes of repose. However, at least

---

[2] "Nullum tempus occurrit regi," or "time does not run against the king," is the legal principle that the statute of limitations does not bar actions by the sovereign.

one federal court in Arkansas has applied *nullum tempu*s in the context of the doctrine of laches based on the reasoning that "laches is an equitable doctrine 'premised upon the same principles that underlie statutes of limitations: the desire to avoid unfairness that can result from the prosecution of stale claims.'" *City of Stamps, Ark. v. Alcoa, Inc.*, Civil No. 05-1049, 2006 WL 2254406, at *10 (W.D. Ark. Aug. 7, 2006) (quoting *Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265, 276 (8th Cir. 2004)). Statutes of repose are "based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." *Ray & Sons Masonry Contractors, Inc. v. U.S. Fidelity & Guar. Co.*, 114 S.W.3d 189, 200 (Ark. 2003) (internal citation and quotation omitted). Although statutes of repose are different from statutes of limitation in that statutes of repose "constitute[] a substantive definition of rights rather than a procedural limitation provided by a statute of limitation," the policy reasons for statutes of repose are similar to statutes of limitation. *Id.* (quoting *Langley v. Pierce*, 313 S.C. 401, 404 (S.C. 1993)). If Arkansas applies *nullum tempus* to statutes of limitation to protect the state from a procedural bar to its claims (and if Arkansas likely would apply *nullum tempus* to protect the state from an equitable bar like laches), then because of the policy similarities between statutes of limitation and statutes of repose, Arkansas's *nullum tempus* doctrine likely also would protect the state from losing its claims to the statute of repose.

Assuming *nullum tempus* applies to the statute of repose, NACA must still demonstrate that it may benefit from the doctrine. *Nullum tempus* generally "applies only to the sovereign itself and not to public corporations or other such governmental agencies to whom powers are delegated." *Hart v. Sternberg*, 171 S.W.2d 475, 478 (Ark. 1943) (internal punctuation omitted).

However, there is an exception "where a subordinate political subdivision or agency is seeking to enforce a right in which the public in general has an interest." *Jensen v. Fordyce Bath House*, 190 S.W.2d 977, 979 (Ark. 1945) (allowing *nullum tempus* where the plaintiff was a county tax collector seeking to collect delinquent taxes).

NACA has not shown that it is seeking to enforce a right in which the public in general has an interest. Instead, NACA is "seeking to enforce a contract right, or some right belonging to it in a proprietary sense." *Id.* In *Arkansas Dep't of Envtl. Quality v. Brighton Corp.*, the Arkansas Supreme Court did not apply the statute of limitations to the Arkansas Department of Environmental Quality because "the 'rights' at issue belong to the public—i.e., the enforcement of environmental regulations intended to improve the environment for the benefit of the public." 102 S.W.3d 458, 469 (Ark. 2003). Similarly, in *City of Stamps, Arkansas v. Alcoa, Inc.*, an Arkansas federal district court applied *nullum tempus* to claims of public nuisance and violations of the Resource Conservation and Recovery Act and Arkansas Solid Waste Management Act, but notably did not apply the doctrine to individual trespass and direct negligence claims. 2006 WL 2254406, at *10.

The public policy underlying *nullum tempus* does not support its use in this case. In *City of Rochester v. Marcel A. Payeur, Inc.*, the Supreme Court of New Hampshire explained that *nullum tempus* "protect[s] the public good by preventing wrongdoers from benefitting from the limitations inherent in governmental bodies' enforcement prowess, to the detriment of public rights." 152 A.3d 878, 882 (N.H. 2016). This concern is most important in adverse possession claims against the state due to "the vast extent and wide variety of publicly-owned land, water and easement rights, as well as governmental bodies' need to rely on the finite universe of public employees, who are otherwise occupied with their regular duties, to detect encroachments on these

rights." *Id.* This case is different for several reasons. Although NACA was created pursuant to ARK. CODE ANN § 14-233-101, it has a corporate structure which allows it to effectively vindicate its rights. Furthermore, this case centers around a contract NACA knowingly entered into, and "a municipality's contractual undertakings are unlikely to lead to unknown violations of public rights." *Id.* Finally, the breach of contract, breach of warranty, and negligence claims all arise out of that contract and its subject matter, rather than out of some more general harm to the public.

For the foregoing reasons, NACA is not entitled to *nullum tempus* exemptions from the statute of repose. Therefore, the negligence, products liability, warranty, and breach of contract claims are barred.

### C.   Indemnification Claim Against Crossland

NACA also brings an indemnification claim against Crossland based on an indemnity provision in the contract between NACA and Crossland. NACA alleges it has "has expended money to third parties, including payments to abate the nuisance and remediate environmental damage caused by Crossland." (Doc. 3, p. 31). For example, NACA alleges that after the pipe failure in March of 2019, DECO was hired to repair the pipes. To the extent that these payments were for repairs to the Project itself, there is no claim for indemnification because the indemnity provision expressly excludes damage to "the Work itself." (Doc. 3, p. 31).

However, NACA also argues that it has made "payments to abate the nuisance and remediate environmental damage caused by Crossland." (Doc. 3, p. 31). NACA cannot recover from Crossland upon a "mere showing that the indemnitee has incurred liability" but instead NACA must demonstrate that it "has suffered actual loss by payment or satisfaction of a judgment or by other payment under compulsion." *Larson Mach., Inc. v. Wallace*, 600 S.W.2d 1, 13 (1980). At this early stage in the litigation, NACA's allegations that it has made compulsory payments to

8

third parties to remediate environmental damage caused by Crossland's actions support a claim for indemnification. Crossland's motion to dismiss the indemnity claim will be denied.[3]

### E. Breach of Contract Claim Against Fidelity

Finally, Separate Defendant Fidelity argues that Plaintiff's breach of contract claim against it should be dismissed because the statute of limitations has run. ARK. CODE ANN. § 18-44-508(b) sets forth the statute of limitations for performance bonds, stating "[n]o action shall be brought on the bond after six (6) months from the date final payment is made on the contract, nor outside the State of Arkansas." In its motion, Fidelity states that final payment on the Project was made no later than December 2010. NACA does not challenge the applicability of this statute or that suit was filed after the statute of limitations. Instead, NACA argues that *nullum tempus* exempts it from the statute of limitations.

As discussed in greater detail above, NACA is not entitled to *nullum tempus* protections on those claims against Crossland that are extinguished by the statute of repose. The same reasoning—that NACA is seeking to enforce a private, contractual right—applies to NACA's breach of contract claims against Fidelity as surety. As with contract claims against Crossland, there is no threat of "unknown violations of public rights" with this breach of contract claim. NACA was aware of the performance bond and could have brought this claim within the statutory time period. Therefore, NACA's claim against Fidelity will be dismissed.

## IV. Conclusion

IT IS THEREFORE ORDERED that Crossland's motion to dismiss (Doc. 7) is GRANTED IN PART AND DENIED IN PART. NACA's breach of contract, negligence, implied warranty,

---

[3] Indemnification claims are not extinguished by the statute of repose. *Ray & Sons Masonry Contractors, Inc.*, 114 S.W.3d at 202–03.

express warranty, and products liability claims against Crossland are DISMISSED WITH PREJUDICE. Plaintiff's indemnity claim against Crossland remains pending.

IT IS FURTHER ORDERED that Fidelity's motion to dismiss (Doc. 9) is GRANTED. NACA's breach of contract claim against Fidelity is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 2nd day of December, 2020.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE