UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NORTHWEST ARKANSAS CONSERVATION
AUTHORITY                                                                                                    PLAINTIFF

v.                                              No. 5:20-CV-05077

CROSSLAND HEAVY CONTRACTORS,
INC.                                                                                                            DEFENDANT

## OPINION AND ORDER

Before the Court are Defendant Crossland Heavy Contractor, Inc.'s ("Crossland") motion for summary judgment (Doc. 42), statement of facts (Doc. 43), and brief in support (Doc. 44). Plaintiff Northwest Arkansas Conservation Authority ("NACA") filed a response (Doc. 47) in opposition, brief in support (Doc. 48), and statement of facts (Doc. 49). Crossland filed a reply (Doc. 52). Crossland's motion will be granted.

In 2007, NACA hired Crossland to construct the Little Osage Creek Wastewater Improvements and Gravity Sewer and the Brush Creek Wastewater Improvements and Gravity Sewer project (the "Project"). In its complaint, NACA alleged several deficiencies in the construction of the Project and brought six claims against Crossland: breach of contract, negligence, breach of express warranty, breach of implied warranty, products liability, and indemnity. On December 2, 2020, the Court granted in part Crossland's motion to dismiss to the effect that NACA's claim for indemnity against Crossland is the only pending claim before the Court. In its motion, Crossland argues it is entitled to summary judgment on this remaining claim because NACA has not demonstrated any claims that can be indemnified under the contract. NACA argues that there is a genuine dispute of material fact as to the indemnity claim and therefore summary judgment is not appropriate. Specifically, NACA argues it has made the

1

following compulsory payments that are covered by the indemnity provision of the contract: payments to Rain for Rent for bypass pumping after overflow events and payments to RJN Engineers, Ace Pipe Cleaning, and other contractors for the diagnosis of faulty pipeline segments as well as the design, engineering, and installation of replacement pipeline.

After viewing the record in the light most favorable to the nonmoving party and granting all reasonable factual inferences in the nonmovant's favor, a motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Serv., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted).

In Arkansas, "[a] contract of indemnity is to be construed in accordance with the rules for the construction of contracts generally." *Ark. Kraft Corp. v. Boyed Sanders Const. Co.*, 764 S.W.2d 452, 453 (Ark. 1989) (citing *Pickens–Bond Const. Co. v. NLR Elec. Co.*, 459 S.W.2d 549 (Ark. 1970)). "[I]n contracts of indemnity the losses to be indemnified must be clearly stated and the intent of the indemnitor's obligation to indemnify against them must be expressed in clear and unequivocal terms and to such an extent that no other meaning can be ascribed." *Chevron U.S.A., Inc. v. Murphy Expl. & Prod. Co.*, 151 S.W.3d 306, 310 (Ark. 2004) (internal citations omitted). "Indemnity agreements are construed strictly against the party seeking indemnification." *Id*. The

Arkansas Supreme Court has previously held that "[a]n action on a contract for indemnity accrues when the indemnitee is subjected to damage on account of its own liability." *Ray & Sons Masonry Contractors, Inc. v. U.S. Fid. & Guar. Co.*, 114 S.W.3d 189, 198 (Ark. 2003) ("To be subjected to damage, there must be a loss.  An indemnitor's obligation to reimburse against loss does not become due until after the indemnitee has paid damages to a third party.").  *See also Cherry v. Tanda, Inc.*, 940 S.W.2d 457, 461 (Ark. 1997) (citing *Larson Machine v. Wallace*, 600 S.W.2d 1 (Ark. 1980)) ("[A]n indemnitor's obligation to reimburse against loss does not become due until *after* the indemnitee has paid damages to a third party.").

> The indemnification provision at issue in the contract between NACA and Crossland states:
>
> To the fullest extent permitted by Laws and Regulations, Contractor [Crossland] shall indemnify and hold harmless Owner and Engineer [NACA], and the officers, directors, partners, employees, agents, consultants and subcontractors of each and any of them from and against all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance of the Work, provided that any such claim, cost, loss, or damage is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom but only to the extent caused by any negligent act or omission of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any of the Work or anyone for whose acts any of them may be liable.

(Doc. 47-3, pp. 24-25).  NACA argues that it has made compulsory payments to prevent and mitigate damage to neighboring properties and ensure compliance with the Clean Water Act and the National Pollution Discharge Elimination System permit program and Crossland must reimburse NACA for these payments.

NACA has not set forth specific facts to demonstrate that it is entitled to indemnity under the contract for any of its claimed costs.  NACA incurred costs to prevent "injury to or destruction

of tangible property (other than the Work[1] itself)" as evidenced by the payments to Rain for Rent. Had NACA not hired Rain for Rent to pump water to a functional manhole, adjacent landowners and the State of Arkansas certainly would have been able to pursue claims against NACA for monetary damages, the value of which likely would have far exceeded the payments to Rain for Rent. Because NACA acted prudently in hiring Rain for Rent to prevent overflow, no tangible property was damaged and so there is no "claim, cost, loss, or damage [that] is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself)." Costs to prevent damage to tangible property are distinct from costs attributable to damage to tangible property, and the contested indemnity provision only covers the latter. Because the payments to RJN Engineers and other contractors were for damage and subsequent repairs to the Work itself, they also are not the kind of costs covered by the indemnity agreement.

NACA cites *Patton v. TPI Petroleum, Inc.*, to support its position that "[i]ndemnity or indemnification can mean simply reimbursement." 356 F. Supp. 2d 921, 927 (E.D. Ark. 2005). The indemnification provision in *Patton* stated "the Tenant shall indemnify and hold harmless the Landlord against any liability, response cost, cost, or expense arising out of any environmental contamination occurring on the Premises . . . ." *Id.* at 926. The injuries at issue in that case were

---

[1] "Work" is defined in the contract as follows:

51. *Work*--The entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents. Work includes and is the result of performing or providing all labor, services, and documentation necessary to produce such construction, and furnishing, installing, and incorporating all materials and equipment into such construction, all as required by the Contract Documents.

(Doc. 47-3, p. 8).

the indemnitee's costs associated with removing environmentally contaminated soil on the property.  It is clear from the facts in *Patton* that the parties in that case understood the indemnity provision to mean reimbursement for all costs associated with remediating the environmental contamination of the land, regardless of whether the indemnitee's costs arose from a third-party claimant.  The indemnity provision signed by NACA and Crossland is wholly different from the *Patton* provision, and NACA has failed to demonstrate any costs that may be indemnified according to the plain meaning of the contract.

    IT IS THEREFORE ORDERED that Crossland's motion for summary judgment (Doc. 42) is GRANTED.  Judgment will be entered separately.

    IT IS SO ORDERED this 11th day of June, 2021.

    /s/ P. K. Holmes, III
    P.K. HOLMES, III
    U.S. DISTRICT JUDGE